ARMIN BENCOE and JULIUS STEINITZ, Copartners, Doing Business as A. BENCOE, Plaintiffs, *v.* HARRY C. CHRISTIANSON and WILLIAM E. MACNAUGHTON, Copartners, Doing Business as H. C. CHRISTIANSON & COMPANY, Defendants.

First Department, March 5, 1920.

**Sales — contract for sale of refined sugar for export with delivery to be made free on board steamer — refusal of seller to deliver to warehouse not breach of contract.**

It does not constitute a breach of a contract for the sale of refined sugar for export, where the raw sugar was imported in bond, and delivery was to be made free on board steamer, for the seller to refuse to deliver the sugar to a warehouse, where in consideration of the seller passing the Custom House entry and carrying the drawback the buyer agreed to furnish the Custom House bill of lading and landing certificate free of charge, for the contract could only be satisfied by a delivery on board ship for export, and, as the provisions were not solely for the benefit of the buyer, he could not waive them and direct delivery to be made to a warehouse; the seller could not be compelled to forego his contract right and accept the assurance of the buyer that he would thereafter export the sugar.

A provision in the contract that if the seller should be unable to collect the drawback through any neglect on the buyer's part to fulfill the agreement the buyer would reimburse the seller, did not authorize the buyer to change the place of delivery, for that provision would not protect the seller as to the drawback if the sugar, through no fault of the buyer, should be destroyed while in the warehouse.

SMITH, J., dissents, with opinion.

MOTION by the plaintiffs, Armin Bencoe and another, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after the dismissal of the complaint and the denial of a motion of the plaintiffs to go to the jury at the close of the plaintiffs' case, upon a trial before the court and a jury at the New York Trial Term in October, 1918.

*Herbert C. Smyth* of counsel [*Ralph W. Thomas* with him on the brief; *Wellman, Smyth & Scofield,* attorneys], for the motion.

*Leo Levy* of counsel [*Lillian B. Dribben* with him on the brief] opposed.

PAGE, J.:

Mr. Justice SMITH sufficiently states the facts in this case. The contract was clearly for the sale of refined sugar for export, delivery to be made free on board steamer in New York; terms net cash payable on presentation of shipping documents. In consideration of the seller passing the Custom House entry and carrying the drawback, the buyer agreed to furnish Custom House bill of lading and landing certificate free of charge. These express provisions of the contract could only be satisfied by the delivery of the sugar on board ship for export. Nor could the buyers waive these provisions and direct delivery to be made to a warehouse, for they were not solely for the benefit of the buyers, as was the case with the provisions in the contract in the case of *Lekas & Drivas* v. *Schwill & Co.* (187 App. Div. 486), which held that they could be so waived. The raw sugar had been imported in bond. On exportation the import duty would be paid back to the sellers on production of the Custom House bill of lading and the certificate of landing in the foreign port. The sellers could not be compelled to forego their contract right and accept the assurance of the buyers that they would thereafter export. The buyers contend that the sellers would have redress against them under the clause of the contract which provides: "If the seller is unable to collect the drawback, through any neglect on the buyer's part to fulfill the foregoing agreement, buyer agrees to reimburse the seller promptly in full for the amount of said drawback." That clause in my opinion, has reference to neglect on the buyer's part to furnish the Custom House bill of lading and the landing certificate. The seller would not be protected by that clause but would lose the entire drawback if, through no fault of the buyer, the sugar were destroyed in the warehouse. This extra hazard could not be imposed upon the sellers without their consent. The change in the manner of delivery is so substantial as in effect to make a new and different contract.

The exceptions should be overruled, with costs, and judgment ordered for the defendants.

CLARKE, P. J., LAUGHLIN and MERRELL, JJ., concur; SMITH, J., dissents.

SMITH, J. (dissenting):

Upon the 29th of September, 1916, a contract was made through one Bernard Meyer, a broker, between H. C. Christianson & Co. of 120 Front street and A. Bencoe, of 82 Wall street, New York city. The contract was an export sugar contract. The terms of delivery were stated to be October seventh to ninth, and the latest October sixteenth. Thereafter the time was extended until October twenty-sixth. The shipment was to be 3,500 kilo bags of fine granulated sugar at $5.65 net cash in bond f. o. b. New York. The invoice was payable on presentation of shipping documents. The contract then provided: " In consideration of the seller passing the Custom House entry and carrying the drawback, buyer hereby agrees to furnish Custom House bill of lading and landing certificate free of charge, these to be delivered promptly. If the seller is unable to collect the drawback, through any neglect on buyer's part to fulfill the foregoing agreement, buyer agrees to reimburse the seller promptly in full for the amount of said drawback. Contracts and agreements contingent upon strikes, accidents, fire or other delays beyond seller's control. Delivery complete on receipt of goods by carrier. This purchase to be invoiced and paid for at contract price. No allowance will be made for declines in market." There is then specified the amount and it is further said that the shipping permit and marks were to be furnished in due time.

Nothing further appears until October 25, 1916. On that date Meyer wrote to Bencoe, who was the purchaser:

" DEAR SIR.— I am advised by Mr. H. C. Christianson, of the firm of H. C. Christianson & Co. that unless shipping instructions were furnished them by noon October 26th, 1916, on the 3,500 bags fine granulated 100 kilos each (220 lbs. net) purchased on September 29th, 1916, at 5.65c net cash in bond f. o. b. New York, same would be cancelled. Kindly give this your attention, and oblige."

To this plaintiff answered on October twenty-fifth to Christianson & Co.:

" GENTLEMEN.— Referring to our Export Sugar Contract, dated Sept. 29, 1916, for 3,500 Kilo bags Fine Granulated sugar, at 5.65c net cash in bond f. o. b. New York, I will thank

you to deliver this sugar at once to the New York Dock Co., Robinson Stores. This sugar is intended for export.

" Yours very truly,

" A. BENCOE."

To this Christianson replied on October twenty-sixth:

" Mr. A. BENCOE,

  " 82 Wall St., City:

  " DEAR SIR.— Yours of the 25th inst. to hand, and in reply we would say that our contract does not allow us to put sugar into store. The sugar was sold to you to be exported not later than October 16th, but you have failed to furnish us with the name of the steamer or instructions, in accordance with the terms of our contract. Therefore, unless the name of the steamer and instructions are given us by twelve o'clock to-day, we shall consider this contract cancelled, as you have not lived up to the terms of same.

" Very truly yours,

" H. C. CHRISTIANSON & CO."

To this on October twenty-sixth plaintiff answered:

" Messrs. H. CHRISTIANSON & Co.,

  " 120 Front Street,

   " New York City:

  " DEAR SIRS.— On the 25th inst. your representative called upon me and asked for shipping instructions under contract September 29th, 1916.

  " I thereupon gave you the instructions requested, in my letter to you of the 25th instant. I have just received your reply, dated today.

  " I again request you to make delivery of this sugar to the New York Dock Co., Robinson's Stores, who are now ready to receive same — without charges to you — all warehouse charges to be for my account and payment at contract price will be made by me to you upon delivery there.

  " I am ready and always have been ready and willing to make payment as per contract.

" Yours very truly,

" A. BENCOE."

On October 27, 1916, the defendants replied:

" Mr. A. BENCOE,

     " 82 Wall Street, City:

   " DEAR SIR.— We are in receipt of your favor of the 26th inst., but evidently you have not read over the terms of the contract, and, as the instructions you have given us do not conform in any way to the terms of the contract, we are unable to accept same.

   " Therefore, as you have not lived up to the terms of the contract in any manner, shape or form, this contract has been cancelled.

               " Very truly yours,

                     " H. C. CHRISTIANSON & CO."

Upon the opening of the case the facts were presented by counsel and the court held as a matter of law that the plaintiffs were not allowed to provide for a different place of delivery than on board the steamer as provided in the contract, and, therefore, that the plaintiffs had violated their contract and could not recover in this action. It seems that the plaintiffs were unable to get the steamer at that time and the delivery at the New York Dock Company, Robinson's Stores, was a delivery temporarily until a steamer could be obtained. The first question then is whether being unable to provide this steamer at this time the plaintiffs have not only forfeited their right to the contract but also have made themselves liable to the defendants for damages when they ordered the goods to be stored in the Robinson Stores at the expense of the plaintiffs and have offered to pay the purchase price upon such delivery. There is no contention here that the storage in the Robinson's Stores would be any more burdensome or any more expensive to the defendants than placing the goods on the ship as was contemplated in the contract. This direction was not at variance with the contract. The place of delivery was a nonessential in the contract, as long as the seller had no additional expense. It is only fair to the purchaser, in case he cannot get his ship ready, that he may pay the purchase price upon delivery of the goods at some other place equally convenient for the buyer without any further expense to him. This seems to be within the principle decided in *Lekas & Drivas* v. *Schwill & Co.* (187 App. Div. 486). In that case Mr. Justice

PAGE wrote for the court, and it was held that " Where a contract for the sale of goods provided that delivery was to be made f. o. b. cars New York, lighterage free, and that the purchaser was to furnish export license and steamer permits for same in time to enable seller to make shipments from Chicago, it was competent for the purchaser to waive the provisions as to delivery at New York and to offer to accept delivery at Chicago." And, further: " Upon the waiver of the aforesaid provision by the purchaser the requirement that export license and steamer permits should be furnished in time to enable the seller to make shipments from Chicago had no further potency." Further, " If the property was not at Chicago but at other points where it would be more advantageous to the seller to make deliveries, or if a lower price was quoted with the understanding that the property was to be exported and not resold in this country, such matters should be pleaded as a defense in an action by the purchaser against the seller for failure to deliver." If the place substituted would be more inconvenient, or if it would cost more to deliver at such place, it was for the seller to set that fact up in the answer, but such is not claimed in this action. This rule is based upon common sense and reasonable interpretation. If, for instance, the goods were to be delivered upon a dock belonging to the buyer and that dock happened to be full, he may reasonably provide that the goods be delivered upon an adjoining dock, which is not full, and which is as accessible as the dock of the purchaser. It is not reasonable to forfeit to the buyer the right to his contract and render him liable for damages for its breach if the place of delivery be changed to another equally accessible. The place of delivery in such case is not of the essence of the contract.

There is one further question here. It seems that where raw sugar is imported in this country the duty must be paid thereon. If it be refined here and then exported, the importer gets a drawback. In this case the seller was entitled to a drawback of seven thousand and odd dollars in case the sugar was exported after having been refined here, and the contract seems to provide that this buyer should expedite the matter and furnish the Custom House bill of lading and the landing certificate which seem to be required in order to obtain the drawback. This landing certificate could only be obtained

when the boat reached the foreign port. When the Custom House bill of lading was obtainable is not shown. The fact that it should be exported was necessary, in order to entitle the seller to a drawback. But there is no provision that the boat should sail upon October sixteenth or upon October twenty-sixth. If the boat sailed within a reasonable time thereafter and the Custom House bill of lading and the landing receipt were furnished within a reasonable time, then the contract would be fully performed. If, however, there should be a failure to perform the contract, that is, to export the sugar within a reasonable time after the contract date, then it is provided in the contract itself that the buyer would be liable to the seller for the amount of his drawback which the seller was " to carry " meanwhile. The seller is fully protected and cannot claim that the buyer, therefore, prejudiced his rights by a change in the place of delivery.

The exceptions should be sustained, with costs, and the motion for a new trial granted.

Exceptions overruled and judgment directed for defendants, with costs. Settle order on notice.